IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 29, 2006

## BRONSON WAYNE COKER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Sullivan County**
**No. C49,394     Phyllis H. Miller, Judge**

_____

**No. E2005-02131-CCA-R3-PC - Filed May 18, 2006**

_____

The petitioner, Bronson Wayne Coker, appeals the dismissal of his petition for post-conviction relief, arguing that his trial counsel provided ineffective assistance for failing to adequately investigate the case or explain the ramifications of the plea agreement and that his guilty pleas were consequently unknowing and involuntary. Following our review, we affirm the dismissal of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

John D. Parker, Kingsport, Tennessee, for the appellant, Bronson Wayne Coker.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Robert H. Montgomery, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On August 29, 2003, the petitioner pled guilty in the Sullivan County Criminal Court as part of a package plea agreement to two counts of misdemeanor assault, two counts of burglary of a building, one count of misdemeanor vandalism, one count of theft under $500, possession of marijuana, three counts of felony failure to appear, two counts of theft over $10,000, one count of attempted theft over $10,000, and one count of vandalism over $1000, in exchange for an effective sentence of nine years to be served consecutively to a Virginia sentence for burglary and grand larceny. During his recitation of facts at the guilty plea hearing, the prosecutor revealed that the two thefts over $10,000 and the attempted theft over $10,000 were based on the petitioner's theft of a 1999 Mitsubishi Eclipse from Don Hill Pontiac in Kingsport and theft of a 1958 Ford Edsel and

attempted theft of a 1970 Porsche from Murphy's Auto Sales, also in Kingsport. The manner of service of the petitioner's sentence was left to the trial court's later determination, and on November 4, 2003, the trial court sentenced the petitioner to serve his time in the Department of Correction.

The petitioner filed a *pro se* petition for post-conviction relief on July 14, 2004, followed by an amended petition on October 7, 2004, after the appointment of post-conviction counsel. In the original and amended petitions, the petitioner claimed that he was denied the effective assistance of trial counsel and that his guilty pleas were unknowingly, unintelligently, and involuntarily entered as a result of counsel's deficiencies in representation. The petitioner alleged, among other things, that counsel failed to adequately investigate his case or inform him of the consequences of his guilty pleas. Specifically, he asserted that counsel failed to investigate the value of the automobiles involved in the theft and attempted theft over $10,000 offenses, misinformed him that he would be sentenced to a drug treatment program instead of prison, and coerced him into pleading guilty by threatening him with greater jail time if he did not accept the plea offer.

At the February 18, 2005, evidentiary hearing, the petitioner's sister, Sheila Duncan, testified that after the petitioner entered his guilty pleas she visited Murphy's Auto Sales on Lynn Garden Drive in Kingsport, where she looked at a green Ford Edsel that was for sale. She said a salesman told her the price of the vehicle was $2800, but it could not be sold at that time because it was tied up in a court case. Duncan acknowledged she did not check the vehicle identification number and therefore did not know if it was the same Ford Edsel the petitioner had been convicted of stealing.

The petitioner testified he told trial counsel he wanted to contest the values of the vehicles because he did not believe any of them was worth $10,000, but trial counsel made no attempt to investigate their values and told him there was nothing he could do about it. He also claimed that trial counsel coerced him into signing the plea agreement by telling him that he could face fifty to sixty years in a jury trial. The petitioner's primary complaint against trial counsel was that he failed to deliver on his promise that he would be sentenced to a drug treatment program instead of prison. The petitioner summed up his complaints against trial counsel as follows:

> No, just that I feel and I believe that there's no way that the cars were worth that value and that . . . they was [sic] in really bad shape and that I was offered the Hay House and I didn't get it from my attorney and that's, you know, really the basis of my argument of being here today.

On cross-examination, the petitioner, who said he had obtained a GED, testified that he was neither under the influence of any drug or alcohol nor suffering from any mental impairment at the time of his guilty plea hearing. He acknowledged he said nothing to the trial court about being sentenced to a drug treatment program instead of prison and conceded that he answered "no" when the trial court asked whether anyone had threatened, coerced, intimidated, or pressured him into pleading guilty, or if anyone had made any promises to him other than what was in the plea agreement. He explained that the "coercion" did not arise until his sentencing hearing:

At that time I did not know that the cars was [sic] not of that value and at the time I pled guilty I had not been to my alternative sentencing hearing and been denied part of my plea bargain, so at the time that wasn't in effect. No, I wasn't coerced at the time. When I went to my alternative sentencing hearing and was denied the Hay House, at that time is when that coercion took effect.

Upon further questioning, the petitioner acknowledged that the trial court never told him that Hay House was part of his plea bargain agreement. He testified trial counsel had mentioned Hay House as "a possibility" and told him that the prosecutor was going to recommend it to the trial court at sentencing. He added, however, that trial counsel told him that he "pretty much had it in the bag." As a consequence, he "was under the impression" he was going to Hay House or else he would not have accepted the plea offer.

Wayne Overby, the sales manager of Don Hill Pontiac-Jeep, testified that he was familiar with the 1999 Mitsubishi Eclipse that was stolen from the dealership on November 22, 2002. He said that after the vehicle was recovered, the dealership sold it for $10,995.

Trial counsel testified he had been an assistant public defender for approximately fifteen years and was appointed to represent the petitioner in the instant cases. He said he thoroughly reviewed the package plea bargain with the petitioner and explained to him the sentences and the conditions contained in it. He stated that he put no pressure on the petitioner to accept the plea offer and never promised him that he would be sentenced to a drug treatment program. Trial counsel testified that he routinely reviews with his clients the different possible sentencing alternatives available to the trial court, and was sure he had done so in this case, but was also positive that he told the petitioner that the sentence would be strictly up to the trial court at the sentencing hearing.

Trial counsel agreed that the police detective involved in the case had sworn under oath that the three vehicles were each valued at over $10,000. He said he could not recall having ever discussed the value of the vehicles with the petitioner, as the sentences for those offenses were to run concurrently to the sentences for other offenses, but if he had, he probably told him that

the owners whose [sic] not, you know generally are not thieves, are testifying that the value is worth a certain thing and, you know, unless I have something very contrary to that then normally that's what they're sworn to and that's what the value is. I mean a lot of times you've got defendants that want to come in and argue the value, . . . I mean people don't, you know, they're going to believe the victim before they do the defendant, generally. And again, in this case it really didn't matter because most of them were concurrent. But I don't even recall us discussing it, really.

On cross-examination, trial counsel testified he never told the petitioner that the prosecutor was going to recommend that he be sentenced to Hay House.

-3-

On April 18, 2005, the post-conviction court entered a detailed written order dismissing the petition for post-conviction relief on the basis that the petitioner had failed to meet his burden of demonstrating either ineffective assistance of counsel or that his guilty pleas were unknowing and involuntary. Among other things, the court specifically accredited the testimony of trial counsel over the testimony of the petitioner, noting that trial counsel testified that he fully explained the ramifications of the plea agreement to the petitioner, never promised him that he would be sentenced to a drug treatment program, and did not coerce, pressure, or threaten him into pleading guilty. The post-conviction court also noted that the petitioner answered appropriately at the guilty plea hearing, indicating that his guilty pleas were knowingly, voluntarily, and intelligently entered.

## ANALYSIS

On appeal, the petitioner raises the interrelated issues of whether the post-conviction court erred in finding he received effective assistance of trial counsel and that his guilty pleas were knowing and voluntary. The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de* novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

In support of his ineffective assistance of counsel claim, the petitioner cites, among other things, his testimony that trial counsel did not investigate the value of the vehicles and promised him that he would be sentenced to Hay House instead of prison. The post-conviction court, however, specifically accredited the testimony of trial counsel over that of the petitioner. Trial counsel testified that he fully explained the plea agreement to the petitioner and never promised anything with respect to the manner of service of his sentence. Trial counsel further testified that he could not recall discussing the value of the vehicles with the petitioner and explained why it was not an important issue in the context of the package plea bargain that was offered by the State. We conclude, therefore, that the record supports the post-conviction court's finding that counsel provided effective representation.

In an interrelated claim, the petitioner also contends that his guilty pleas were not knowingly, voluntarily, or intelligently entered. Specifically, he asserts that the record is clear that he entered into the guilty pleas under the assumption that he would receive a community corrections sentence and be sent to a drug treatment program instead of prison. The State argues that the evidence supports the post-conviction court's finding that the petitioner freely, voluntarily, and knowingly entered his pleas. We agree with the State.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, the Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

Trial counsel's testimony, accredited by the post-conviction court, established that the petitioner was fully informed of the consequences of his pleas, including that the method of service of his sentence would be determined by the trial court at the sentencing hearing. Trial counsel's testimony further established that he did not coerce or threaten the petitioner into pleading guilty and that it was the petitioner's decision to accept the package plea bargain offered by the State.

The petitioner's own testimony established that he had obtained his GED, that he signed the guilty plea agreement, and that he told the trial court that no one had threatened or induced him into pleading guilty and said nothing to the trial court about being sentenced to a drug treatment center. Furthermore, the transcript of the guilty plea hearing reflects that the petitioner responded appropriately when asked if he understood the various constitutional rights as described by the trial court, if he understood he was waiving certain rights by pleading guilty, whether he had been fully informed of the charges and the plea agreement by his counsel, whether he understood his guilty pleas, and whether he was satisfied with counsel's representation. In sum, the record fully supports the post-conviction court's finding that the petitioner failed to show that his guilty pleas were unknowing and involuntary.

## CONCLUSION

Having reviewed the record, we conclude that the petitioner has failed to meet his burden of demonstrating he was denied the effective assistance of trial counsel or that his guilty pleas were unknowing and involuntary. Accordingly, we affirm the dismissal of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE

-6-